IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

<table>
<tr><td>ELLIOT J. CHERRY,</td><td>CASE NO. 5:23-CV-01164-CEF</td></tr>
<tr><td>Petitioner,</td><td>JUDGE CHARLES E. FLEMING</td></tr>
<tr><td>vs.</td><td>MAGISTRATE JUDGE DARRELL A. CLAY</td></tr>
<tr><td>WARDEN GEORGE FREDERICK,[1]</td><td>**REPORT AND RECOMMENDATION**</td></tr>
<tr><td>Respondent.</td><td></td></tr>
</table>

INTRODUCTION

Representing himself, Petitioner Elliott Cherry, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254 on May 24, 2023. (ECF #1 at PageID 15). The District Court has jurisdiction under § 2254(a) and the matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Jun. 22, 2023). On August 21, 2023, then-Respondent Warden Harold May, as Warden of the Marion Correctional Institution (hereinafter, the State), filed the Return of Writ. (ECF #6). On October 30, 2023, Mr. Cherry submitted his Traverse to the Return of Writ. (ECF #9).

That same day, Mr. Cherry filed a Motion to Expand the Record with six items related to his proceedings in state court seeking a writ of mandamus. (*See* ECF #10). On December 14, 2023, because the State had already supplemented the record with one of those items, I determined the

---

[1] George Frederick since replaced Harold May as Warden of the Marion Correctional Institution. Under Fed. R. Civ. P. 25(d), I automatically substitute Warden Frederick as the proper respondent.

motion was moot as to that document and I denied the motion as to the other five items. (ECF #14). On January 2, 2024, Mr. Cherry objected, arguing the materials were essential to argue he had not procedurally defaulted his grounds for relief. (ECF #15). On June 3, 2024, the District Court sustained the objection in part and ordered the State supplement the record with Mr. Cherry's mandamus filings. (ECF #16). The State did so on June 3, 2024. (ECF #17).

Mr. Cherry raises three grounds for relief challenging a 2020 resentencing hearing in state court and his petition is now decisional. For the reasons that follow, I recommend the District Court **DISMISS** Ground One as not cognizable, **DISMISS** Grounds Two and Three as procedurally defaulted, and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Cherry a certificate of appealability as to all grounds of his petition.

PROCEDURAL HISTORY

**A.     Relevant background of the 2001 conviction for child endangering and felony murder**

Magistrate Judge William H. Baughman, Jr. summarized the factual and procedural history of Mr. Cherry's convictions when analyzing his 2004 habeas petition. *See Cherry v. Hudson*, No. 504-CV-31, 2007 WL 781318, at *7-12 (N.D. Ohio Mar. 12, 2007). Because Mr. Cherry's claims in this petition challenge a 2020 resentencing hearing, I summarize the procedural history here only as it relates to those claims.

In 2001, Mr. Cherry was convicted of child endangering and felony murder, with child endangering serving as the predicate felony. (ECF #6-1 at PageID 313, 318; *see also State v. Cherry*, No. 20771, 2002 WL 1626105 (Ohio Ct. App. July 24, 2002), *appeal not allowed* 780 N.E.3d 387 (Ohio 2002) (table)). Mr. Cherry had struck his girlfriend's thirteen-month-old child who then died. (ECF #6-1 at PageID 313-14). Subsequent autopsy results identified blunt force trauma to the abdomen as the cause of the child's death. (*Id.* at PageID 316-18). Mr. Cherry was sentenced to

2

eight years' imprisonment for child endangering and fifteen years to life for murder. (*Id.* at PageID 318). The trial court ordered the two sentences to run concurrently "for the reason that they are merged for purposes of sentencing; as agreed to by all parties." (ECF #6-1 at PageID 114).

## B.    Resentencing

On March 13, 2019, representing himself, Mr. Cherry filed a motion to vacate void sentences in the Summit County Court of Common Pleas, arguing the trial court erred by imposing separate sentences for child endangerment and murder despite the court finding the two offenses merged. (ECF #6-1 at PageID 579, 581-82). On March 18, 2019, the trial court denied Mr. Cherry's motion, concluding the claim was barred by the doctrine of res judicata. (*Id.* at PageID 597).

On April 16, 2019, representing himself, Mr. Cherry timely appealed to the Ninth District. (*Id.* at PageID 599). There, he raised one assignment of error, arguing the trial court erred when denying his motion to vacate void sentences as they are contrary to law. (*Id.* at PageID 604-06). On October 30, 2019, the Ninth District reversed the trial court's judgment, concluding under *State v. Williams*, 71 N.E.3d 234 (Ohio 2016), Mr. Cherry's sentence for child endangering was void. (*Id.* at PageID 634-37; *see also State v. Cherry*, No. 29369, 2019 WL 5607888 (Ohio Ct. App. Oct. 30, 2019)). The appellate court remanded the matter "'for a new sentencing hearing at which the state must elect which allied offense it will pursue against'" Mr. Cherry. (ECF #6-1 at PageID 637) (quoting *State v. Whitfield*, 922 N.E.2d 182, 183 (Ohio 2010).

Pursuant to the remand, the trial court held a resentencing hearing on March 9, 2020. (ECF #6-1 at PageID 639). A prosecutor and an attorney ostensibly for Mr. Cherry, Noah C.

Munyer, appeared.[2] (*Id.*). Mr. Cherry was not present. (*Id.*). The State elected to proceed to sentence on Count 4, murder, so the trial court voided the sentence previously imposed for Count 3, child endangering. (*See id.*). On March 23, 2020, the trial court journalized Mr. Cherry's new sentence as an "indeterminate and mandatory sentence of 15 years to Life [for murder] remains unchanged." (*Id.*)

On April 22, 2020, through new counsel, Mr. Cherry timely appealed to the Ninth District. (ECF #6-1 at PageID 640). There, he raised two assignments of error:

1.  The trial court erred as a matter of law by resentencing [Mr. Cherry] in the absence of his presence or any waiver by [him] of such.

2.  The trial court erred as a matter of law by depriving [Mr. Cherry] of his right to be represented by counsel of his choice.

(*Id.* at PageID 644).

On April 28, 2021, the Ninth District affirmed Mr. Cherry's sentence. (*Id.* at PageID 673). The appellate court concluded "Mr. Cherry was not entitled to a full resentencing hearing . . . . It, therefore, follows that the trial court did not deprive Mr. Cherry of his counsel of choice at a hearing that neither he, nor any counsel, had a right to attend." (*Id.* at PageID 679).

## C.    State mandamus action

On August 16, 2021, representing himself, Mr. Cherry sought a writ of mandamus from the Ninth District to compel the trial judge to hold a full resentencing hearing. (ECF #17 at

---

[2]    The state-court record does not detail how Attorney Munyer came to represent Mr. Cherry. Mr. Cherry's retained Attorney Michael Partlow entered a notice of appearance but did not receive notice of the resentencing hearing. (*See* ECF #6-1 at PageID 646). The docket did not disclose whether Attorney Munyer was appointed by the trial court or retained by Mr. Cherry. (*See id.* at PageID 649; *see also id.* at PageID 749-79). Mr. Cherry suspected "the trial court simply found an available attorney in the courthouse and ask him to stand in." (*Id.*) (internal quotation marks omitted).

4

PageID 884, 893). He argued the trial judge ignored the Ninth District's mandate by holding a limited, instead of a full, resentencing hearing. (*See id.* at PageID 893). On November 3, 2021, the Ninth District denied relief, concluding because the court already held a hearing, Mr. Cherry did not have a clear legal right to a second one and he should raise any errors during the first hearing on appeal and not in a separate mandamus action. (*See id.* at PageID 919; *see also State ex rel. Cherry v. Breaux*, No. 30076, 2021 WL 5114782, at *2 (Ohio Ct. App. Nov. 3, 2021), *aff'd*, 205 N.E.3d 450 (Ohio 2022)).

On December 9, 2021, representing himself, Mr. Cherry appealed to the Supreme Court of Ohio. *See* Notice of Appeal, *State ex rel. Cherry v. Breaux*, 205 N.E.3d 450 (Ohio 2022) (No. 2021-1504).[3] He raised one proposition of law:

> The Ninth Appellate District erred in ruling that the Appellant had an adequate legal remedy by direct appeal from the trial court's judgment, thereby granting Appellee's motion to dismiss.

(*See* ECF #17 at PageID 926). On June 7, 2022, the Supreme Court of Ohio affirmed. (*Id.* at PageID 922; *see also State ex rel. Cherry v. Breaux*, 205 N.E.3d at 453).

D.     **Delayed appeal of resentencing**

On July 12, 2022, representing himself, Mr. Cherry sought leave to file a delayed appeal in the Supreme Court of Ohio. (*Id.* at PageID 683). On August 30, 2022, the Court denied leave. (*Id.* at PageID 707).

---

[3]     The notice of appeal is not contained in the state-court record but available on the Supreme Court of Ohio's public docket. A federal court may take judicial notice of other cases on the docket of other courts. *Smitley v. Eppinger*, No. 1:18-CV-1838, 2018 WL 9618503, at *1 n.2 (N.D. Ohio Sept. 21, 2018). I thus take judicial notice of the filing date on the notice of appeal.

## FEDERAL HABEAS PETITION

Mr. Cherry raises three grounds for relief:

**GROUND ONE:** Violation of the petitioner's United States Constitutional Rights Amendments 5, 6, and 14.

**Supporting facts**: The state trial court failed and/or refused to adhere to the State Court of Appeals mandate to provide the petitioner with a new resentencing hearing as ordered by the state court of appeals in violation of the petitioner's United States constitutional rights to due process of law under Amendment 14.

**GROUND TWO:** Violation of the petitioner's United States Constitutional Rights Amendments 5, 6, and 14.

**Supporting facts**: The state trial court denied the petitioner his United States constitutional right to presence at his resentencing hearing. The state trial court refused to allow the petitioner to be present at the time the state trial court imposed the sentence against the petitioner at the new resentencing hearing in violation of the petitioner's United States constitutional rights to due process of law under Amendments 14, 5, 6.

**GROUND THREE:** Violation of the petitioner's United States Constitutional Rights Amendments 5, 6, and 14.

**Supporting facts**: The state trial court refused to provide the petitioner his rights to legal counsel of his choosing. Prior to the resentencing hearing, the petitioner retained personal legal counsel Michael A. Partlow to represent the petitioner at the resentencing hearing. Instead Attorney Noah C. Munyer made an appearance at the petitioner's resentencing on his behalf of the petitioner.

The petitioner did not retain Noah C. Munyer's legal services to represent the petitioner at the resentencing hearing. Petitioner has never meet Noah C. Munyer and the petitioner does not know Mr. Munyer. The petitioner retained and chose Michael A. Partlow to represent the petitioner at the resentencing hearing. The State Trial Court stood mute and allowed Noah C. Munyer to represent the petitioner at the resentencing hearing instead of the petitioner's chosen legal counsel Michael A. Partlow who was paid for legal services to represent the petitioner at the resentencing hearing. In violation of the petitioner's United States constitutional rights under Amendments 5, 6, and 14.

(ECF #1 at PageID 5, 7-8, 16) (cleaned up).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Cherry's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes "[s]tate courts are adequate forums for the vindication of federal rights" and so the statute acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

PROCEDURAL REQUIREMENTS FOR HABEAS REVIEW

**One-Year Statute of Limitations.** A habeas petition must be timely to be considered. AEDPA establishes a one-year statute of limitations on applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d). AEDPA's strict filing deadlines promote the finality of convictions and curb dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

AEDPA's statute of limitations period runs from the latest of four dates:

(A)     The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

7

(B)     The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, under 28 U.S.C. § 2244(d)(2), the one-year limitations period is paused (*i.e.*, tolled) while a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending.

**State-law Claims Not Cognizable on Federal Habeas Review**. The District Court lacks jurisdiction over a habeas petitioner's claims if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put otherwise, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010) (citing § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, merely asserting that a state-law error violates the federal constitution cannot by itself justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."

8

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as another state appellate court reviewing state courts' decisions on state law or procedure).

Even so, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was

actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

**Excusing a Procedural Default by Showing Cause and Prejudice.**  To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro

se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

## ANALYSIS

### A.     Because the petition is not a "second or successive" petition, the District Court has jurisdiction over it.

As mentioned above, this is not Mr. Cherry's first habeas petition. This raises the question whether the District Court has jurisdiction to hear his claims. AEDPA requires a petitioner obtain permission from the appropriate federal court of appeals before filing a "second or successive" habeas petition in a federal district court. 28 U.S.C. § 2244(b)(3)(A); Rule 9(a), Rules Governing § 2254 Cases. Without such permission, the district court lacks jurisdiction to review the petition. § 2244(b)(3)(A). Although the State concedes the petition is not a "second or successive" petition (*see* ECF #6 at PageID 42), federal courts have "an independent obligation to examine their own jurisdiction" in civil cases. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Since his 2001 conviction, Mr. Cherry has repeatedly sought habeas relief. *See Cherry v. Hudson*, No. 5:04-cv-31, 2007 WL 781318 (N.D. Ohio Mar. 12, 2007), *appeal dismissed*, No. 12-4421 (6th Cir. Feb 21, 2013); *In re Cherry*, No. 12-3292 (6th Cir. Oct. 31, 2012); *Cherry v.*

*Bunting*, No. 5:14-cv-368 (N.D. Ohio Mar. 26, 2014), *authorization denied*, No. 14-3287 (6th Cir. Oct. 17, 2014); *Cherry v. Bunting*, No. 5:16-cv-1784 (N.D. Ohio July 26, 2016), *authorization denied in part*, No. 16-3875 (6th Cir. Feb. 13, 2017); *Cherry v. Wainwright*, No. 5:17-cv-492, (N.D. Ohio Mar. 17, 2017); *Cherry v. Wainwright*, No. 5:17-cv-912 (N.D. Ohio May 31, 2017), *appeal dismissed*, No. 17-4129 (6th Cir. Dec. 20, 2017).[4] The 2012 petition is the only one in the state-court record. (*See* ECF #6-1 at PageID 539, 576-77).

Despite these previous petitions, I conclude this petition is not a "second or successive" petition because it challenges the March 9, 2020 resentencing and these challenges could not have been raised in any of his previous petitions, all of which predate 2020. *See In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010) ("[A] numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition."). Because this issue goes to the District Court's jurisdiction, if the District Court disagrees, I recommend the petition be transferred to the United States Court of Appeals for the Sixth Circuit for authorization. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).

**B.     The petition is timely.**

The State argues Mr. Cherry's petition is untimely because his conviction became final in 2003 and the one-year limitations period expired in 2004. (*See* ECF #6 at PageID 42-45). The State also contends the March 2020 resentencing did not change the finality of that conviction and any other start date is inappropriate because Mr. Cherry did not act with the required due diligence. (*Id.* at PageID 45-48). I conclude Mr. Cherry's limitations clock began on March 23, 2020 when

---

[4]     While not all of these cases are in the state-court record, a federal court may take judicial notice of other cases on both its own docket and the docket of other courts. *Smitley*, 2018 WL 9618503, at *1 n.2.

12

the factual predicate for his claims could have been discovered with due diligence. Starting from

that date and applying statutory tolling, I conclude his petition is timely.

### 1. The appropriate start date is March 23, 2020 when the factual predicate for Mr. Cherry's claims could have been discovered with due diligence

In determining whether a petition is timely, a court first determines the date when the

statute of limitations begins to run. As discussed above, AEDPA's limitations period runs from the

latest of four dates, two of which are relevant here:

(A)     The date on which the judgment became final by the conclusion of direct
        review or the expiration of the time for seeking such review;

* * *

(D)     The date on which the factual predicate of the claim or claims presented
        could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Beginning with the date of finality under § 2244(d)(1)(A), the State argues Mr. Cherry's

judgment became final on March 18, 2003 and so the one-year limitations period lapsed on March

19, 2004. (*See* ECF #6 at PageID 44). Mr. Cherry argues his March 2020 resentencing restarted the

limitations period. (ECF #9 at PageID 837-38) (citing *In re Stansell*, 828 F.3d 412 (6th Cir. 2016).

The State responds a resentencing can restart the limitations period when it is a full resentencing

or resulted in a worse-than-before sentence and Mr. Cherry's resentencing was neither. (*See id.* at

PageID 45-46) (citing *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016).

The other possible start dates are under § 2244(d)(1)(D), the date the factual predicate of

the claim could have been discovered. For Mr. Cherry's claims about his resentencing, the factual

predicate first occurred on March 9, 2020 when the trial court held the limited resentencing

hearing without him or his retained attorney. Because neither Mr. Cherry nor his retained

attorney were present for the resentencing, he necessarily could not have been aware of those facts on that day. *See Smith v. Meko*, 709 F.App'x 341, 344 (6th Cir. 2017) ("The only operative question in such an inquiry is when the person was aware of the vital facts for his claim"). With due diligence, Mr. Cherry or his retained attorney could have discovered the trial court held a limited resentencing without them when the trial court journalized the resentencing on March 23, 2020.

The State argues this start date is inappropriate because Mr. Cherry did not act with the required due diligence. (*See* ECF #6 at PageID 46-48). A petitioner acts with due diligence "by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest" in challenging the state-court adjudication. *See Johnson v. United States*, 544 U.S. 295, 308 (2005). As detailed in the tolling analysis below, Mr. Cherry promptly but unsuccessfully appealed the resentencing, litigated and appealed a mandamus action, and sought leave for a delayed appeal of the resentencing. By this, Mr. Cherry demonstrated due diligence to be entitled to a start date under § 2244(d)(1)(D).

Because § 2244(d) starts the limitations clock from the latest available date, the District Court need not determine whether the March 2020 resentencing created a new judgment. If it did, the judgment became final the same day Mr. Cherry could have discovered the factual predicate for his claims. If it did not, the March 23, 2020 discovery of the factual predicate of his claims is later in time than finality and thus controls.

### 2. Mr. Cherry's petition is timely after applying statutory tolling starting from March 23, 2020.

After applying statutory tolling, Mr. Cherry's petition is timely. Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while "a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains

14

pending." The statutory tolling provision can "pause a clock that has not fully run" but cannot restart an already-expired limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Starting from March 23, 2020, the statute of limitations started to run the next day on March 24, 2020. *See* Fed. R. Civ. P. 6(a)(1) ("[I]n computing any time period . . . exclude the day of the event that triggers the period."). On April 22, 2020, Mr. Cherry timely appealed his resentencing (*id.* at PageID 640), tolling the limitations period with 29 days elapsed.

The Ninth District affirmed on April 28, 2021. (ECF #6-1 at PageID 673). But the one-year limitations clock did not restart that day because an application for state post-conviction relief or other collateral review remains "pending" until the completion of ordinary state procedure. *See Carey v. Saffold*, 536 U.S. 214, 220 (2002). Thus, Mr. Cherry's one-year clock remained paused during the 45-day window for him to appeal to the Supreme Court of Ohio, even though he ultimately did not do so. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a). The 45-day period would have expired on Saturday, June 12, 2021, but it was automatically extended to the next court day on Monday, June 14, 2021. *See* Ohio Sup. Ct. Prac. R. 3.03(A)(1). That day, tolling stopped and the limitations clock resumed with 29 days elapsed.

Then, 63 days passed until Mr. Cherry filed his mandamus petition on August 16, 2021. (ECF #17 at PageID 884). This again tolled the limitations period because it challenged the validity of his resentencing. *See Witkowski v. Vasbinder*, No. 04-CV-74232-DT, 2006 WL 618891, at *4 (E.D. Mich. Mar. 9, 2006) (noting a mandamus petition may toll the limitations period when it challenges the validity of a sentence). When tolling restarted that day, 92 days had lapsed on the 365-day clock. The Ninth District denied the writ of mandamus on November 3, 2021. (*Id.* at PageID 919). Mr. Cherry appealed to the Supreme Court of Ohio on December 9, 2021. *See*

Notice of Appeal, *State ex rel. Cherry v. Breaux,* No. 2021-1504 (docket sheet). The appeal was timely under Ohio law. *See* Ohio Sup. Ct. Prac. R. 6.01(A)(1). The limitations clock thus remained tolled until the Supreme Court of Ohio affirmed the denial of the writ on July 7, 2022. (ECF #17 at PageID 922).

Five days then passed before Mr. Cherry sought leave for a delayed appeal of his resentencing order on July 12, 2022 (ECF #6-1. at PageID 683), again tolling the limitations period. At this point, 97 of 365 days had passed. The Supreme Court of Ohio denied leave on August 30, 2022 (*id.* at PageID 707), thus restarting the countdown. Mr. Cherry filed his federal habeas petition on May 24, 2023, 267 days later, by tendering it to the prison mailing system. (ECF #1 at PageID 15); *see also Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding a pro se petitioner files a federal habeas petition the day it is tendered to the prison mailing system). With tolling, the petition is timely with 359 of 365 days elapsed.

**C.** **Ground One is not cognizable in federal habeas review, but Grounds Two and Three are cognizable.**

Next, the State argues that Mr. Cherry's claims for relief are not cognizable because they allege violations of state law. (ECF #6 at PageID 51-53).

A state prisoner may challenge his custody in habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). To be cognizable in federal habeas corpus, there must be constitutional errors material to the outcome of the case that resulted in a denial of fundamental fairness to the petitioner. *Walker v.*

16

*Engle*, 703 F.2d 959 (6th Cir. 1983). Put another way, a claim that is a non-cognizable issue of state law "presents no federal issue at all." *See Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

1. **Ground One, alleging the state trial court did not follow the state appellate court's mandate, is solely an issue of state law and is not cognizable.**

Ground One, alleging the trial court did not adhere to the appellate court's mandate to hold a new resentencing hearing, asserts a violation only of state law, not federal law. The claim raises a question about which resentencing procedure must result from an Ohio appellate court's remand order that itself was based on a decision by the Supreme Court of Ohio. This question, and whether the trial court answered correctly, are issues solely of Ohio law. *See Thompson v. McConahay*, No. 22-3412, 2022 WL 19732839, at *2 (6th Cir. Oct. 31, 2022) (holding a claim that an Ohio trial court was obligated to hold a full resentencing hearing instead of a limited one is not cognizable).

The various cases Mr. Cherry relies on establish the role of federal district courts after receiving a mandate from a federal appellate court as a matter of federal appellate procedure. *See Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967) (holding a district court on remand must execute the appellate mandate precisely according to its terms and nothing more); *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435-36 (9th Cir. 1984) (same); *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 676 F.Supp. 790, 791 (E.D. Mich. 1988) (same, but analyzed under the law-of-the-case doctrine).[5] But federal appellate procedure does not apply in state courts. Nor do these

---

[5]   Mr. Cherry also cites to "<u>Berry v Astrue 2008 U.S.Dist.Lexis 27565[¶9]</u>" (*sic*) (ECF #9 at PageID 847). However, the name and electronic database number in this citation do not match. The named case, *Berry v. Astrue*, No. 3:05-1170, 2008 U.S. Dist. LEXIS 27568, 2008 WL 927546 (S.D. W.Va. Apr. 4, 2008), is a social security case and thus not relevant here. The electronic database number is for *Hill v. Britten*, No. 8:06CV742, 2008 U.S. Dist. LEXIS 27565,

cases establish a federal constitutional right to particular appellate procedure in state court that is cognizable on habeas review.

Additionally, Mr. Cherry's invocation of the Fourteenth Amendment is not enough to state a cognizable federal constitutional claim. As discussed above, Ground One is an objection to the state court's analysis of state court decisions and a petitioner must do more than invoke the Fourteenth Amendment or use the words "due process" to state a cognizable federal claim. *See Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006).

Ground One could be cognizable "if the state-court determination is so fundamentally unfair that it deprives a defendant of due process." *See Bey*, 500 F.3d at 519-20. (quotation omitted). A state-court determination is fundamentally unfair when it "violate[s] those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* at 523 (quoting *United States v. Lovasco*, 431 U.S. 783 (1977)). However, Mr. Cherry does not explain how the determination to hold a limited resentencing hearing and not a full one was itself fundamentally unfair. Mr. Cherry asserts the trial court was ordered "to conduct a resentencing hearing to merge count (3) child endangering charge, not to vacate count (3)." (ECF #9 at PageID 847). But he does not explain how that distinction carries constitutional meaning. The Ninth District remanded the case "for a new sentencing hearing at which the state must elect which allied

---

2008 WL 906754 (D. Neb. Mar. 31, 2008). *Hill* is a federal habeas case, but addresses exhaustion and procedural default, not the constitutionality of state appellate procedure. Construing the citation liberally, "2008 U.S. Dist. Lexis 27565 [¶9]" may have been intended to cite *Hill*, 2008 U.S. Dist. LEXIS 27565, at *9. There, *Hill* rejects an argument to review a procedurally defaulted claim because a pro se petitioner was "told by counsel and those inmate legal aides" that it was unnecessary to raise the issue in state court. *Id.* But to the extent Mr. Cherry argues he received ineffective legal help or was misled in bringing his habeas claims, he has no right to legal counsel in federal habeas proceedings and, even if he did, ineffective assistance cannot morph a state-law claim into a cognizable federal claim.

18

offense it will pursue against" Mr. Cherry. (ECF #6-1 at PageID 637). The choice to hold a limited proceeding where the only issue was whether the State elected the child-endangering or murder offense to pursue is not so odious on its face as to violate basic conceptions of justice.

I thus recommend the District Court **DISMISS** Ground One as not cognizable.

**2. Grounds Two and Three, raising the right to be present and to be represented by counsel, do raise federal constitutional issues.**

Mr. Cherry's remaining grounds for relief each make out a federal claim. Ground Two claims the trial court denied Mr. Cherry due process by holding the resentencing hearing in his absence. This is a cognizable federal claim: "the defendant . . . has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)). In other words, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.*

Ground Three claims the trial court denied Mr. Cherry his right to be represented by retained counsel of choice by holding the resentencing hearing without his attorney but with a different attorney representing him. This also is a cognizable federal claim: "[a]n element of" the Sixth Amendment right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *see also Pouncy v. Macauley*, 546 F.Supp.3d 565, 580-82 (E.D. Mich. 2021) (holding a denial of this right is cognizable on federal habeas review).

The State does not explain how these two federal rights are not implicated here; rather it asserts the claims are not cognizable because they "involve the application of state statutes, state

19

procedural rules, and state case law." (ECF #6 at PageID 52). But a federal claim is still cognizable even if it might implicate overlapping state law or if the state court relied solely on state-law grounds to reject a presented federal claim. The State also asserts the state courts did not act contrary to clearly established federal law (*id.* at PageID 53), but that argument goes to the merits of the grounds for relief, rather than their cognizability. *See Falkenstein v. Kelly*, No. 1:14-CV 1629, 2015 WL 3824369, at *8, n.4 (N.D. Ohio June 19, 2015).

I thus conclude Grounds Two and Three state cognizable federal constitutional claims.

**D.    Mr. Cherry procedurally defaulted Grounds Two and Three by not presenting them to the state courts.**

The State argues Mr. Cherry procedurally defaulted Grounds Two and Three by not raising them in a timely appeal to the Supreme Court of Ohio and his unsuccessful request for a delayed appeal is an adequate and independent state-law ground to bar habeas relief. (*See* ECF #6 at PageID 56-57). Mr. Cherry responds his request for a delayed appeal properly presented Grounds Two and Three to the state courts. (ECF #9 at PageID 843-44).

Contrary to Mr. Cherry's assertion, the Sixth Circuit has held that the Supreme Court of Ohio's decision to deny a motion for leave to file a delayed appeal "constitutes a procedural ruling sufficient to bar federal court review of [the defendant's] habeas corpus petition." *Bonilla*, 370 F.3d at 497. Thus, Mr. Cherry's failure to appeal timely the Ninth District's decision affirming his resentencing to the Supreme Court of Ohio, coupled with the Supreme Court of Ohio's denial of the motion for a delayed appeal, resulted in a procedural default of Grounds Two and Three. *See Bingham v. Haviland*, No. 3:20-CV-01846-BYP, 2023 WL 6385656, at *11 (N.D. Ohio Aug. 1, 2023), *report and recommendation adopted,* 2023 WL 6383684 (N.D. Ohio Sept. 29, 2023).

20

As mentioned above, to avoid procedural default, Mr. Cherry must demonstrate cause for the default and actual prejudice. *Coleman*, 501 U.S. at 750. He does not do so anywhere in his Traverse[6] (*see* ECF #9 at PageID 842-44), despite discussing the four-part procedural-default analysis which includes cause and prejudice (*id.* at PageID 842) (citing *Wainwright v. Sykes*, 433 U.S. 97 (1977). Although Mr. Cherry's Traverse is entitled to a liberal construction as a pro se pleading, I am not required to scour the record and invent arguments demonstrating cause for him. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction [of a pro se petitioner's pleadings] does not require a court to conjure allegations on a litigant's behalf").

I thus recommend the District Court **DISMISS** Grounds Two and Three as procedurally defaulted.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying

---

[6]     Mr. Cherry also does not argue a fundamental miscarriage of justice would occur if the default is not overlooked and the issue is not implicated here. *See Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017) (per curiam) (explaining that the miscarriage-of-justice exception requires the presentation of new, reliable evidence showing that the petitioner is actually innocent).

constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. Cherry has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are not cognizable federal constitutional claims or are procedurally defaulted. Therefore, I recommend the District Court **DENY** Mr. Cherry a COA as to all grounds of his petition.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Ground One as not cognizable, **DISMISS** Grounds Two and Three as procedurally defaulted, and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Cherry a certificate of appealability as to all grounds of his petition.

Dated: March 24, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).